1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                   AT TACOMA

10

SONIA LIM, surviving spouse of EDUARDO
11   LIM, and for the marital community comprised
    thereof,

12                                                    Case No. C06-5191 FDB
            Plaintiff,
13                                              ORDER GRANTING DEFENDANTS'
        v.                                      MOTION FOR SUMMARY JUDGMENT
14
    FRANCISCAN HEALTH SYSTEMS, a
15   corporation doing business in Washington and
    CATHOLIC HEALTH INITIATIVES, a
16   corporation doing business in Washington,

17            Defendants.

18          This matter comes before the Court on Defendants' motion for summary judgment seeking

19   dismissal of Plaintiff's claims, with prejudice.  Plaintiff has not responded to the motion for summary

20   judgment.  Under Local Rule 7 his failure to respond may be deemed as an admission that the motion

21   for summary judgment has merit.  As defendants facts are not contested the court adopts the facts as

22   set forth in defendant's motion for summary judgment.  After having reviewed all materials submitted

23   by the parties and relied upon for authority, the Court is fully informed and hereby grants summary

24   judgment and dismisses Plaintiff's claims, with prejudice.

25

26   ORDER - 1

1

**INTRODUCTION AND BACKGROUND**

2          This suit for employment discrimination was filed by Plaintiff on March 10, 2006 in Pierce

3    County Superior Court and removed to this Court by Defendants on April 10, 2006.  Trial is

4    scheduled for May 29, 2007.  Discovery cutoff was January 29, 2007.

5          Franciscan Health Systems (Franciscan) is a non-profit religious corporation that operates

6    several healthcare facilities, including St. Joseph Medical Center, St. Clare Hospital, and St. Francis

7    Hospital, all in the greater Tacoma area.  Eduardo Lim was hired by Franciscan in 1995 as a part-

8    time Medical technologist, working at St. Francis Hospital.  Lim later worked at St. Clare Hospital

9    and St. Joseph Medical Center.  While at St. Joseph, Lim had performance problems and ultimately

10   resigned his employment 1999 in lieu of suspension.

11         It is Franciscan policy not to rehire individuals who resign in lieu of suspension or

12   termination.  In June 2000, the Laboratory Manager at St. Clare Hospital, Jim Breeden, rehired Lim

13   to work at St. Clair.  Breeden had worked with Lim in the past and did not know the reason Lim had

14   left St. Joseph Medical Center.  Subsequently, upon discovering the reason for Lim termination at St.

15   Joseph, Breeden met with Lim and told him he would not tolerate carelessness and errors for which

16   he had been criticized during his previous period of employment at St. Joseph.  The working

17   relationship between Breeden and Lim continued to be collegial.  Breeden was never aware of any

18   cultural or racial tension between Lim and himself during their working relationship.

19         Franciscan maintains a Quality Improvement Monitoring Program (QIM) that requires all

20   employees to report errors or gaps in patient care so that the hospital can investigate how to improve

21   processes and ensure patient safety.  The QIM is not used as a form of punishment or discipline.

22   Employees are instructed to maintain confidentiality of the information contained in the QIM and are

23   prohibited from retaliating against a co-worker for following the QIM protocol.

24         In early 2002, Breeden began receiving complaints from Lim's co-workers concerning errors

25   in his work and performance deficiencies.  Ultimately, Lim was suspended for three days in July.

26   ORDER - 2

1  2002, due to continued problems with his performance.  Upon his return he was instructed to chose

2  between improving his performance or resigning.

3     In early December 2002, Lim learned that Annette Baldonado, a co-worker, had completed a

4  QIM form reporting a performance deficiency that Lim had committed.  Lim made repeated calls  to

5  Ms. Baldonado asking about the QIM and ultimately confronted her in the lab, angrily accusing Ms.

6  Baldonado of getting him into trouble.  Ms. Baldonado felt threatened and afraid of Lim.  Jim

7  Breeden then had a conversation with Lim wherein Lim told Breeden he was "so pissed off at

8  Annette [Baldonado] that he could slap the bitch."  Breeden reported the incident to the Human

9  Resource Manager, Jill Karon, and was instructed to send Lim home on administrative leave pending

10  an investigation.

11     HR Director Karon began an investigation on December 9, interviewing and taking written

12  statements from Baldonado, Breeden, and witnesses to the incident.  Lim refused to be interviewed

13  by Karon, believing that she was biased in favor of Breeden.  Lim named a HR representative from

14  St. Joseph Medical Center, Les Soltis, as an individual he believed could be fair.  Soltis took over the

15  investigation and met with Lim to obtain his side of the incident.  Lim admitted to Soltis to have

16  gotten upset and in an agitated state and admitted making the statements to Baldonado.  Lim did not

17  raise any concerns about Breeden.

18     HR representatives Karon and Soltis, along with Breeden, the Director of Laboratory

19  Services and Director of Labor and Employee Relations met and discussed the situation and came to

20  a consensus that Lim should be terminated for violating Hospital policy in his aggressive outburst

21  toward Baldonado in retaliation for her preparing a QIM

22     Karon, Soltis and Breeden met with Lim on December 17 and presented to him a prepared

23  memorandum containing their decision to terminate his employment.  After Lim was presented with

24  the termination notice, Lim presented the group with a prepared complaint concerning acts of Jim

25  Breeden, alleging on various occasions between 1999 and 2002, Breeden had made offensive

26  ORDER - 3

1    remarks and treated some employees differently than others.  Lim had never complained to

2    management or HR about these alleged incidents.

3         Although Lim had already been terminated, the hospital followed the standard procedure for

4    investigating complaints by employees. The investigation simply found that the complained of

5    comments of Breeden were intended to be humorous, based on Breeden and Lim's prior working

6    relationship as peers.  A few isolated comments were found to be insensitive and Breeden was

7    admonished not to attempt to use such humor in the workplace and was required to attend sensitivity

8    training.  Lim was notified of the results of the investigation.

9         Lim filed for bankruptcy in 2003.  On January 9, 2004, Eduardo Lim committed suicide.

10   Sonia Lim filed this action for employment discrimination and wrongful discharge as the "surviving

11   spouse of Eduardo Lim, and for the marital community comprised thereof."

12                                **SUMMARY JUDGMENT STANDARD**

13        The purpose of summary judgment is to identify and dispose of factually unsupported claims

14   and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary

15   judgment, the court is constrained to draw all inferences from the admissible evidence in the light

16   most favorable to the non-moving party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir.

17   2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the

18   moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56©).  The moving party

19   bears the initial burden to demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

20   v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party

21   must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v. Zenith Radio

22   Corp., 475 U.S. 574, 586-87 (1986).  A dispute as to a material fact is "genuine" if there is sufficient

23   evidence for a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty

24   Lobby, Inc., 477 U.S. 242, 248 (1986).  The opposing party must present significant and probative

25   evidence to support its claim or defense.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d

26   ORDER - 4

1   1551, 1558 (9th Cir. 1991).  Affidavits made on personal knowledge and setting forth facts as would

2   be admissible at trial are evidence that a court may consider when determining whether a material

3   issue of fact exists. Fed. R. Civ. P. 56(e).  Legal memoranda and oral argument are not evidence and

4   do not create issues of fact. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

5   Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material

6   fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); T.W. Elec. Serv. v.

7   Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987).  The nonmoving party must instead

8   set forth "significant probative evidence" in support.  T.W. Elec. Serv., at 630.  Summary judgment

9   will thus be granted against a party who fails to demonstrate facts sufficient to establish an element

10  essential to his case when that party will ultimately bear the burden of proof at trial.

11                                      **REAL PARTY IN INTEREST**

12          The Federal Rules of Civil Procedure 17(a) provide that an action shall be prosecuted in the

13  name of the real party in interest.  While Rule 17 does not define who is a "real party in interest," it

14  specifically lists an "executor" or an "administrator" as a party who "may sue in that person's own

15  name without joining with him [or her] the party for whose benefit the action is brought." Id.  There is

16  no evidence that Sonia Lim is an executor or administrator of the estate of Eduardo Lim.  Moreover,

17  Mr. Eduardo Lim's estate is in bankruptcy and the bankruptcy code endows the bankruptcy trustee

18  with the exclusive right to sue on behalf of the estate.  Wieburg v. GTE Southwest Inc., 272 F.3d 302

19  (5th Cir. 2001)(bankruptcy trustee was the real party in interest with exclusive standing to assert

20  employment discrimination claims).  Additionally, the marital community on whose behalf Mrs. Lim

21  also purports to bring this action ceased to exist upon Mr. Lim's death.  See, Vail v. Toftness, 51 Wn.

22  App. 318, 321 (1988).

23          Accordingly, it appears that Sonia Lim is not the real party in interest and thus cannot

24  maintain this action.  Rule 17(a) also states however,  that "[n]o action shall be dismissed on the

25  ground that it is not prosecuted in the name of the real party in interest until a reasonable time has

26  ORDER - 5

1   been allowed ... for ratification of commencement of the action by ... the real party in interest."

2       Although it appears that no real party in interest will likely come forward to "ratify" the

3   commencement of this action, the Court feels compelled not to dismiss the action on this basis.

4   **EXEMPTION FROM WASHINGTON LAW AGAINST DISCRIMINATION**

5       Washington's Law Against Discrimination, RCW 49.60, permits injured persons to bring a

6   civil action for employment discrimination.  RCW 49.60.010, . 030(2).  Its definition of "employer"

7   "includes any person acting in the interest of an employer ... who employs eight or more persons, and

8   does not include any religious or sectarian organization not organized for private profit."  RCW

9   49.60.040(3).  Although the state anti-discrimination law does not "authorize" religious groups to

10  discriminate, it does "authorize" their exemption from the law's reach.  City of Tacoma v. Franciscan

11  Foundation, 94 Wn. App. 663, 569-70 (1999).  See also, Farnham v. CRISPA Ministries, 116 Wn.2d

12  659 (1991).  Thus, all non-profit religious employers are exempt from all provisions of the

13  Washington Law Against Discrimination.

14      Plaintiff's state law claims under Washington's Law Against Discrimination, RCW 49.60 are

15  subject to summary judgment of dismissal.

16  **DISPARATE TREATMENT AND RETALIATION**

17      The elements necessary to establish a prima facie case of discrimination or retaliation are the

18  same under federal and state law.  Manatt v. Bank of America, NA, 339 F.3d 792, 797 (9th Cir. 2003)

19  (plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a

20  claim under Title VII); Sischo-Nownejad v. Merced Cmty. Coll. Dist., 934 F.2d 1104, 1112 (9th Cir.

21  1991).(elements of cause of action under § 1983 are the same as those under Title VII); Hernandez v.

22  Spacelabs Medical Inc., 343 F.3d 1107, 1112 (9th Cir. 2003); Hill v. BCTI Income Fund-I, 144 Wn.2d

23  172, 23 P.3d 440, 446 (2001)(Washington has adopted the federal protocol in discrimination cases

24  brought under state and common law).

25      Motions for summary judgment in cases alleging disparate treatment discrimination are

26  ORDER - 6

1    analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411

2    U.S. 792 (1973).  Under that framework, a plaintiff must first establish a prima facie case of

3    discrimination. The burden of production then shifts to the defendant to show legitimate,

4    non-discriminatory reasons for defendant's action.  The burden then shifts back to the plaintiff to show

5    that the defendant's reasons were pre-textual.  Despite this burden shifting, the ultimate burden of

6    persuading the trier of fact that the employer intentionally discriminated remains at all times with the

7    plaintiff.  Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000); Norris v. City and County of San

8    Francisco, 900 F.2d 1326, 1329 (9th Cir. 1990).

9          To make out a prima facie case of disparate treatment, Plaintiff must show that: (1) he

10   belonged to a protected class; (2) he was performing his job in a satisfactory manner; (3) he was

11   subjected to an adverse employment action; and (4) similarly situated employees not in his protected

12   class received more favorable treatment.  Kang v. U. Lim America, Inc., 296 F.3d 810, 818 (9th Cir.

13   2002); Chuang v. Univ. of California Davis, 225 F.3d 1115, 1123 (9th Cir. 2000).  As here, where the

14   same actor is responsible for both the hiring and firing of a discrimination plaintiff and both actions

15   occur within a short period of time, a strong inference arises that there was no discriminatory motive.

16   Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270-71 (9th Cir. 1996).

17         Plaintiff has failed to show that he performed his job in a satisfactory manner.  In light of the

18   written discipline outlining specific incidents of performance deficiencies and his retaliatory behavior

19   toward a co-worker, Plaintiff cannot show that he was performing his job in a satisfactory manner.

20   Thus he cannot establish a prima facie case of discrimination.

21         Even were Plaintiff able to make out a prima facie case, Defendants have stated legitimate,

22   non-discriminatory reasons for Plaintiff's termination.  No evidence has been presented that the stated

23   reasons for termination were pre-textual.  See, Vasquez v. County of Los Angles, 349 F.3d 634, 641

24   (2003).

25         A prima facie case of retaliation requires the Plaintiff show that (1) he engaged in protected

26   ORDER - 7

1    activity, such as filing of complaint alleging racial discrimination, (2) employer subjected him to

2    adverse employment action, and (3) causal link exists between protected activity and adverse action.

3    Manatt v. Bank of America, NA, 339 F.3d 792, 800 (9th Cir. 2003).  Plaintiff has failed to present any

4    evidence that the discipline or termination has a causal relationship to a protected activity, such as

5    complaints of racial discrimination.

6         Even were Plaintiff able to make a prima facie case of discrimination, Fransiscan has set forth

7    a legitimate, nondiscriminatory reason for the termination of Plaintiff.  See, Manatt, at 801-02.

8    Plaintiff has provided no evidence that the legitimate explanation was pre-textual.

9         The Defendants are entitled to summary judgment on Plaintiff's disparate treatment

10   discrimination and retaliation claims.

11                        **HOSTILE WORK ENVIRONMENT**

12        To establish prima facie hostile work environment claim under either Title VII or § 1981,

13   employee must raise triable issue of fact as to whether (1) he was subjected to verbal or physical

14   conduct because of his national origin, (2) conduct was unwelcome, and (3) conduct was sufficiently

15   severe or pervasive to alter conditions of his employment and create abusive work environment.

16   Manatt v. Bank of America, NA, 339 F.3d 792, 798 (9th Cir. 2003).  A hostile work environment

17   exists when the work place is permeated with discriminatory intimidation, ridicule, and insult that is

18   sufficiently severe or pervasive as to alter the condition of the victim's employment and create an

19   abusive working environment.  Faragher v. Boca Raton, 524 U.S. 775, 786 (1998).  The conduct

20   must be severe or pervasive enough to create an objectively hostile or abusive work environment; an

21   environment a reasonable person in the plaintiff's position would find hostile or abusive considering all

22   the circumstances.  Faragher, at 787; Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81

23   (1998); Ellison v. Brady, 924 F.2d 872, 879 (9th Cir.1991).  The assessment of whether an

24   environment is objectively hostile "requires careful consideration of the social context in which the

25   particular behavior occurs and is experienced by its target." Oncale, at 81.  The victim must perceive

26   ORDER - 8

1  the environment as hostile; the conduct must actually alter the conditions of the victim's employment.

2  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21-22 (1993).  Whether an environment is hostile or

3  abusive depends on all the circumstances including; the frequency of the discriminatory conduct; it's

4  severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and

5  whether it unreasonably interferes with an employee's work performance.  Harris, at 23; Clark County

6  School Dist. v. Breeden, 532 U.S. 268, 271 (2001).

7        The Plaintiff's allegations fall short of the severity of conditions that constitute a hostile work

8  environment.  See, Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003).

9        The Defendants are entitled to summary judgment dismissing Plaintiff's hostile work

10  environment claim.

11                **PROMISE OF SPECIFIC TREATMENT IN SPECIFIC SITUATIONS**

12        To establish a cause of action for breach of promise of specific treatment in specific situations,

13  an employee must prove: (1) that a statement in an employee manual or handbook or similar

14  document amounts to a promise of specific treatment in specific situations, (2) that the employee

15  justifiably relied on the promise, and (3) that the promise was breached .  Korslund v. Dyncorp

16  Tri-Cities, Inc., 156 Wn.2d 168 (2005); Bulman v. Safeway, Inc., 144 Wn.2d 335, 340-41, 27 P.3d

17  1172 (2001).  Mrs Lim alleges that Defendants breached a promise that Eduardo Lim would be

18  subject to progressive discipline.  However, she has not produced evidence that supports a finding of

19  (1) a promise, (2) reliance or (3) breach.  The absence of any one of these elements defeats her claim.

20                **WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY**

21        Employment contracts that are indefinite in duration may generally be terminated by either the

22  employer or the employee at will. Hubbards v. Spokane County, 146 We.2d 699, 707, 50 P.3d 602

23  (2002).  However, the Washington courts have recognized an exception to this general rule when an

24  employee is discharged for reasons that contravene a clear mandate of public policy. Id.; Korslund v.

25  Dyncorp Tri-Cities Service, Inc., 156 Wn.2d 168 (2005).  To establish a claim for wrongful discharge

26  ORDER - 9

1  in violation of public policy, a plaintiff must prove: (1) the existence of a clear public policy (clarity

2  element); (2) that discouraging the conduct in which they engaged would jeopardize the public policy

3  (jeopardy element); (3) that the public-policy-linked conduct caused the dismissal (causation element);

4  and (4) the defendant must not be able to offer an overriding justification for the dismissal (absence of

5  justification element).  Korslund, at 125; Hubbard, at 707.

6        The public policy exception to the at-will employment doctrine is a narrow one and applied

7  cautiously to avoid the exception swallowing the rule that employment is terminable at will.  Sedlacek

8  v. Hillis, 145 Wn.2d 379, 390, 36 P.3d 1014 (2001); Blinka v. Wash. State Bar Assn., 109 Wn.App.

9  575, 586, 36 P.3d 1094 (2001).  The employee bears the burden to prove that the discharge violated a

10  clear mandate of public policy.  Moreover, courts must 'find' not 'create' public policy.  Selix v.

11  Boeing Co., 82 Wn.App. 736, 741, 919 P.2d 620 (1996).  Whether or not a clear mandate of public

12  policy exists, sufficient to meet the clarity test is a question of law.  Sedlacek , at 388.  The ultimate

13  inquiry is whether the employer's conduct contravenes the letter or purpose of a constitutional,

14  statutory, or regulatory provision or scheme, Thompson v. St Regis Paper Co., 102 Wn.2d 219, 232,

15  685 P.2d 1081 (1984).  Findings of public policy must be grounded in legislation or prior

16  jurisprudence.  Sedlacek, at 385.

17        No state of federal laws have been identified by Plaintiff as setting forth the purported public

18  policy that governs this action.  Plaintiff's claim of violation of public policy is clearly insufficient to

19  create a material issue of fact to defeat summary judgment.

20                **CONCLUSION**

21        For the reasons set forth above, Defendant's are entitled to summary judgment dismissing

22  Plaintiff's case in its entirety, with prejudice.

23        ACCORDINGLY,

24        IT IS HEREBY ORDERED:

25        Defendants' Motion for Summary Judgment [Dkt #23] is **GRANTED**.  Plaintiff's case is

26  ORDER - 10

1   dismissed in its entirety, with prejudice.

2

3

4           DATED this 9th day of March, 2007.

5

6

7

8                           FRANKLIN D. BURGESS
                            UNITED STATES DISTRICT JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER - 11